EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José A. Torres Rivera<br><br>Peticionario | Certiorari<br><br>2018 TSPR 36<br><br>199 ____ |

Número del Caso: CC-2017-678

Fecha: 23 de febrero de 2018

Tribunal de Apelaciones:

     Región Judicial de Bayamón-Carolina

Abogada de la parte peticionaria:

     Lcda. Iris Y. Rosario Nieves

Oficina del Procurador General:

     Lcdo. Luis Negrón Román
     Procurador General

Materia: Resolución del Tribunal con Voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                          **Núm.** CC-2017-0678

José A. Torres Rivera

    Peticionario

RESOLUCIÓN

San Juan, Puerto Rico, a 27 de febrero de 2018

Atendida la *Primera Moción de Reconsideración* presentada por la parte peticionaria de epígrafe, se provee no ha lugar.

A la *Moción Informativa Urgente* presentada por el peticionario, el Tribunal se da por enterado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar las siguientes expresiones a las que se unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo y señor Feliberti Cintrón:

> "Como la revisión es contra el resultado del dictamen del Tribunal de Apelaciones y no sus fundamentos, el Juez Asociado señor Martínez Torres vota conforme. La petición del acusado, aquí peticionario, no cumple con el Art. 5(b) de la Ley Núm. 246-2015, 34 LPRA sec. 4024(b), pues carece de una 'justificación detallada' de cómo el análisis de DNA crea una 'razonable probabilidad' de cambiar la convicción del señor Torres Rivera."

La Jueza Presidenta Oronoz Rodríguez reconsideraría. La Juez Asociada señora Rodríguez Rodríguez reconsideraría y hace constar las siguientes expresiones a las que se une el Juez Asociado señor Colón Pérez quien también reconsideraría:

"La Juez Asociada señora Rodríguez Rodríguez proveería *ha lugar* a la moción de reconsideración presentada. En virtud de la recién aprobada Ley Núm. 73 de 7 de febrero de 2018, y conforme a la vigencia retroactiva de dicha ley, procede que el foro primario ordene el traslado de evidencia solicitado por el peticionario para que el Instituto de Ciencias Forenses pueda realizar los análisis correspondientes.

En este caso, la solicitud de traslado presentada por el peticionario ante el foro primario tenía justamente como propósito determinar la existencia de evidencia genética que, a su vez, le permitiera acogerse a los mecanismos dispuestos en ley para un análisis de ADN. De esta manera, el peticionario advendría en conocimiento de la evidencia que le permitirá sustentar su petición. Este curso de acción, conforme a las enmiendas aprobadas, activaría el término de doce (12) para presentar una solicitud de análisis de ADN. Al declinar atender en sus méritos el recurso ante nuestra consideración, le imponemos una traba adicional al peticionario, quien ahora tendrá que presentar otra solicitud ante el Tribunal de Primera Instancia al amparo de las enmiendas contenidas en la Ley Núm. 73 de 7 de febrero de 2018. Todo esto con el riesgo de que ésta sea erróneamente denegada una vez más y se repita un proceso al que le hubiésemos puesto fin con la expedición del recurso ante nuestra consideración."

El Juez Asociado señor Estrella Martínez reconsideraría y emitió un Voto particular disidente.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Torres Rivera

   Peticionario

         v.                     CC-2017-0678     Certiorari

El Pueblo de Puerto Rio
   Recurrido

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 27 de febrero de 2018.

El caso que este Tribunal tiene ante su consideración provocó lo que muy pocos casos criminales logran: activar la maquinaria legislativa para aprobar rápidamente una legislación. Específicamente, el pasado 7 de febrero, se aprobaron importantes enmiendas a la Ley de análisis de ADN post sentencia, infra, para garantizar que **la caducidad no sea un obstáculo** para tener acceso a las herramientas y la tecnología que, en su día, pudieran confirmar la no culpabilidad del peticionario. Igualmente, se introdujo a la Ley un lenguaje que deja meridianamente claro, en este caso, el **acceso a posible evidencia exculpatoria** en manos del Estado.

A pesar de esa realidad, una Mayoría de este Tribunal ni siquiera opta por confrontar a la Oficina del Procurador General para que comparezca e informe si se allana a la solicitud del peticionario, ante los cambios introducidos por la Asamblea Legislativa. En su defecto, solamente proveen No Ha Lugar a la solicitud del peticionario. Respetuosamente disiento del criterio mayoritario de este Tribunal, no sólo por ser contrario a la normativa aplicable en la Ley de análisis de ADN post sentencia (Ley Núm. 246-2015), 34 LPRA sec. 4021 et seq., sino también al debido proceso de ley, en su vertiente procesal. Ante ese cuadro, el proceder de la Mayoría ignora garantías contenidas en la Constitución Federal y en la de Puerto Rico, al igual que la intención legislativa y la letra clara de la ley, cuyas recientes enmiendas tornaron académica la controversia y derribaron el fundamento medular en el cual descansó el Tribunal de Apelaciones para confirmar al Tribunal de Primera Instancia.

A pesar de que la Asamblea Legislativa derribó los obstáculos procesales que erróneamente levantaba la burocracia gubernamental, para no conceder acceso a la prueba exculpatoria, hoy el peticionario encuentra un penoso obstáculo en este Tribunal: el No Ha Lugar.

A la luz del marco estatutario y constitucional expuesto en este disenso, opino que erraron los foros recurridos al denegarle al Sr. José A. Torres Rivera (señor Torres Rivera o peticionario) el traslado de la evidencia solicitada. En consecuencia, hubiese revocado y ordenado el referido

traslado, con el fin de poner en posición a la defensa del peticionario para determinar el cumplimiento del Art. 10 de la Ley Núm. 246-2015, supra, y observar el mandato legislativo incluido en la misma.

Con eso en mente, procedo a puntualizar el contexto fáctico y procesal en el cual se desarrolla la presente controversia.

## I

El peticionario se encuentra confinado desde los 18 años de edad, luego de haber sido encontrado culpable en un proceso en el cual su representación legal planteó múltiples irregularidades en la fase investigativa, en la identificación del acusado, entre otras. No obstante, recayó una sentencia en su contra por 224 años.[1] Luego de 25 años en la cárcel y ante el desarrollo de la tecnología, el reclamo del señor Torres Rivera no solamente debe interesarle a él y a sus familiares. Nos debería interesar a todos conocer la verdad, porque de tener acceso a la alegada evidencia exculpatoria y probarse su teoría, el sistema de justicia criminal tendría la oportunidad de reabrir este caso y encausar al verdadero autor del atroz crimen de abusar sexualmente de una joven y que se encuentra en la libre comunidad.

---

[1] Tras una moción para corregir la sentencia, el 22 de junio de 2016, el foro primario corrigió su sentencia, siguiendo lo dispuesto por el Máximo Foro federal en el caso de Graham v. Florida, 560 US 48 (2010). Véase, Voto disidente del Juez Asociado señor Estrella Martínez en Pueblo v. Álvarez Chevalier, res. el 12 de febrero de 2018, 2018 TSPR 20.

Así las cosas, la defensa del señor Torres Rivera comenzó a investigar si el Instituto de Ciencias Forenses poseía cierta evidencia que, durante el juicio, había sido sometida a un análisis serológico por el referido instituto.[2] A esos efectos, el 15 de mayo de 2016, el Instituto de Ciencias Forenses remitió una misiva a la defensa del peticionario donde sostuvo que no poseía ninguna de las piezas de evidencia sometidas a análisis y que, el 13 de noviembre de 1990, las mismas fueron entregadas a la Policía de Puerto Rico.

La investigación de la defensa continuó y, el 3 de noviembre de 2016, la Policía de Puerto Rico les notificó a éstos que estaban en posesión de tres piezas de evidencia, a saber: un pantalón mahón, una camisa y un sostén. Era conocido que el pantalón mahón, en efecto, contenía líquido seminal. Ello salió a relucir a raíz del estudio serológico llevado a cabo durante el juicio. No obstante, **ni la camisa ni el sostén, en posesión de Policía de Puerto Rico, habían sido sometidos a algún tipo de análisis para determinar si éstos poseen algún tipo de material biológico.**

Por consiguiente, el 14 de febrero de 2017, la defensa del peticionario presentó una Solicitud sobre traslado de evidencia, al amparo de la Ley de análisis de ADN post sentencia, supra, con **el fin de que se trasladara la evidencia antes mencionada de la Policía de Puerto Rico al Instituto de**

---

[2]El Sr. José A. Torres Rivera es representado por la Sociedad para Asistencia Legal.

**Ciencias Forenses**. Además, argumentaron que la solicitud era meramente para saber si la evidencia en cuestión tenía **algún** material genético, y no para llevar a cabo un análisis de ADN como tal, puesto que esto sería un acto prematuro.

En respuesta, el Ministerio Público se opuso y arguyó que la solicitud se había presentado fuera del término jurisdiccional dispuesto en la Ley Núm. 246-2015, supra, es decir, posterior al 29 de diciembre de 2016. Asimismo, argumentó que la moción no cumplía con los requisitos esbozados en el Art. 5 de la Ley Núm. 246-2015, supra, y que la moción en controversia debió haber sido presentada ante la Policía de Puerto Rico, mas no ante el tribunal. Examinadas las posturas de ambas partes, el foro primario declaró sin lugar la solicitud de la defensa. Este dictamen fue confirmado por el foro apelativo intermedio, pero no sin éste antes hacer constar que la razón principal para su actuación fue que al haber transcurrido el término jurisdiccional de doce meses dispuesto en la Ley Núm. 246-2015, supra, ningún confinado podía acogerse a los remedios provistas en la precitada ley. Ello, pues, el Art. 4 de la Ley Núm. 246-2015, supra, disponía que "la moción [solicitando análisis de ADN] deberá ser presentada en un término jurisdiccional de doce (12) meses contados a partir de la vigencia de esta ley". 34 LPRA sec. 4022.[3] Además, sostuvo que conceder la solicitud del

_____

[3] La Ley de análisis de ADN post sentencia (Ley Núm. 246-2015), 34 LPRA sec. 4021 et seq. fue aprobada el 29 de diciembre de 2015.

peticionario constituiría una expedición de pesca, acción no autorizada ni fomentada por la mencionada ley.

Consecuentemente, el señor Torres Rivera recurrió ante nos para que revoquemos la denegatoria del referido traslado de evidencia. En esencia, éste arguye que lo presentado no es un análisis de ADN para los fines de la referida ley, sino un traslado y que, por ende, no cabe hablar de los requisitos del Art. 5 de la Ley Núm. 246-2015, supra. Asimismo, la representación legal del peticionario ha puesto en posición a este Tribunal en cuanto a las recientes enmiendas legislativas que afectan sustancialmente la controversia ante nos. No obstante, hoy este Tribunal decide denegar el recurso presentado.

**II**

A la luz de lo anterior, es importante analizar el andamiaje constitucional y estatutario aplicable. Veamos.

**A.**

La Constitución de Puerto Rico dispone que no se privará a nadie de su libertad o propiedad sin que antes se cumpla con el debido proceso de ley. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. De ese modo, la vertiente procesal de esa garantía le "*impone al Estado* la obligación de garantizar que, *cuando intervenga con los intereses de libertad y propiedad del individuo*, lo haga 'a través de un procedimiento que, en esencia, sea justo y equitativo [y] que respete la

dignidad de los individuos afectados'".[4] No cabe duda que esta garantía constitucional cobra mayor relevancia e importancia cuando estamos ante un procedimiento criminal, puesto que está en juego la libertad del ciudadano.

En ese sentido, el descubrimiento de prueba es una de las instancias en la cual se activa esta garantía, ya bajo el debido proceso de ley se cuenta con una base más amplia que lo estatuido en las Reglas de Procedimiento Criminal. Véase, Regla 95 de Procedimiento Criminal, 34 LPRA, Ap. II, sec. 95; Pueblo v. Vélez Bonilla, 189 DPR 705, 718 (2013). Es decir, de acuerdo con la mencionada garantía constitucional, existen instancias en las que el acusado tiene derecho a examinar evidencia en manos del Estado, la cual no sería posible obtener a base de la Regla 95 de Procedimiento Criminal, supra.

Por otro lado, se ha determinado que el Estado tiene un deber constitucional de descubrir y entregar a la defensa cualquier evidencia exculpatoria que éste posea, independientemente de que se vaya a utilizar en el juicio. Pueblo v. Echavarría Rodríguez, 128 DPR 299, 376 (1991). En otras palabras, el Estado "está obligado a descubrir cualquier tipo de evidencia que sea relevante a la inocencia o al castigo del acusado, independientemente de que la evidencia en cuestión cumpla o no con los criterios establecidos en las

---

[4]Opinión disidente del Juez Asociado señor Rebollo López en Pueblo v. Agostini Rodríguez, 151 DPR 426, 441 (2000) (citas omitidas).

Reglas de Procedimiento Criminal". Pueblo v. Vélez Bonilla, supra, pág. 719. Véase, además, Pueblo v. Hernández García, 102 DPR 506 (1974). De forma similar, hemos puntualizado que el Estado, "en su obligación de proveer un juicio justo bajo la cláusula de debido proceso de ley, y aun sin mediar solicitud de la defensa, "debe[] revelar evidencia exonerante en su poder . . . que de permanecer ocult[a] e ignorad[a] sofocaría[] la verdad en la sala de justicia". Pueblo v. Rodríguez Sánchez, 109 DPR 243, 247 (1979). El deber de descubrir la verdad no sólo recae en el fiscal a cargo del caso, sino que es un deber del Ministerio Público en general. Pueblo v. Arzuaga, 160 DPR 520, 537 n.13 (2003).

Nótese, que lo anterior no equivale a que el Estado tenga que entregar todo tipo de evidencia que éste posee. La jurisprudencia ha sido clara al establecer que este deber sólo recae sobre evidencia exculpatoria. Pueblo v. Vélez Bonilla, supra, pág. 708-709; Pueblo v. Rodríguez, 193 DPR 987, 1000-1001 (2015) ("No podemos olvidar que nuestra Constitución garantiza a toda persona el derecho a que el Estado le revele evidencia exculpatoria como parte de su derecho a un juicio justo".).

**B.**

Cónsono con lo anterior, no se puede perder de perspectiva que la depuración de la verdad es la esencia de nuestro procedimiento judicial. Pueblo v. Rodríguez Sánchez, supra. Este principio es de tal importancia en nuestro ordenamiento que se permite llevar a cabo un nuevo juicio en

determinadas instancias, incluso posterior a haberse dictado sentencia. Véase, Regla 192 de Procedimiento Criminal, 34 LPRA, Ap. II, sec. 192. En este sentido, se ha sostenido que:

> Nuestro ordenamiento procesal penal provee para la concesión de un nuevo juicio como una de las salvaguardas más eficaces de la administración de la justicia en un sistema acusatorial basado en la presunción de inocencia de todo acusado. Así reconoce, en circunstancias excepcionales, la preeminencia de la verdad sobre el principio de cosa juzgada contenido en una sentencia firme. Opinión de conformidad de la Jueza Asociada Señora Fiol Matta en Pueblo v. Díaz Morales, 170 DPR 749, 763 (2007).

De igual modo, hemos sostenido que "la concesión de un nuevo juicio salvaguarda los intereses de **la verdad y la justicia**, y dependerá de los hechos y de las circunstancias particulares de cada caso, en virtud de su naturaleza excepcional". Pueblo v. Marcano Parrilla, 168 DPR 721, 737 (2006) (énfasis suplido). Adviértase, que "[e]ste recurso de revisión es de naturaleza excepcional, pues tiene por objeto la revocación de sentencias firmes, atentando así en contra del principio de 'cosa juzgada'. Su **finalidad es de justicia**, puesto que reconoce la preeminencia de la verdad sobre la sentencia firme". Íd. pág. 730 (énfasis suplido). De esa manera, se alcanza un buen balance entre el interés del Estado de que los litigios tengan fin y el interés social de hacer justicia.

Sin embargo, debe tenerse en cuenta que no es cualquier evidencia la que activa la concesión de un nuevo juicio, luego de haberse dictado sentencia. La Regla 192 de Procedimiento Criminal, supra, es clara al establecer que para que se

conceda una moción de nuevo juicio por el hecho de que ha advenido en conocimiento de nueva prueba, luego de haberse dictado sentencia, ésta debe ser "de tal naturaleza que evidencien la inocencia del condenado". 34 LPRA, Ap. II, sec. 192. Es decir, el mero hecho de que el acusado haya advenido en conocimiento de evidencia que no tuvo disponible durante el transcurso del juicio, por sí solo, no amerita el remedio de un nuevo juicio, ya que ésta tiene que cumplir con el referido estándar, uno complicado de alcanzar.

De lo anterior se desprende que nuestro ordenamiento contempla situaciones donde el fin punitivo del procedimiento criminal sucumbe ante situaciones que, de no atenderlas, constituiría un fracaso a la justica. Tanto es así que se permite, de estar presentes circunstancias particulares, poner la finalidad de la sentencia y la economía procesal en segundo plano, con el fin de depurar la verdad.

De este modo, queda meridianamente claro que la búsqueda de la verdad no culmina una vez recae una sentencia final y firme. Eso es así, pues el ordenamiento jurídico provee las herramientas necesarias para continuar con la encomienda de depurar la verdad. Ello, pues, incluso luego de haber finalizado el proceso penal, le permite al afectado solicitar un nuevo juicio a la luz de prueba nueva que evidencie la inocencia de éste.

C.

Respecto al debido proceso de ley, se ha establecido que su cobertura es de naturaleza amplísima. Voto particular disidente del Juez Asociado señor Estrella Martínez en Pueblo v. Crespo Cumba, 193 DPR 899, 911 (2015). Como bien indica el Profesor Chiesa Aponte, la cláusula constitucional sobre el debido proceso de ley es una complicada, pero fundamental. E.L. Chiesa Aponte, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83, 145 (1996). En su aplicación a los procesos penales, resulta ser el fundamento que mayor flexibilidad provee para presentar argumentos de todo tipo y naturaleza. Íd. Ello, en parte, habida cuenta que el debido proceso de ley cubre todas las etapas del procedimiento penal, incluyendo aquellas posteriores a la sentencia. Pueblo v. Crespo Cumba, supra. Por consiguiente, resulta claro que esta cláusula constitucional es de suma importancia a la controversia presente. Ante el claro mandato constitucional, la Asamblea Legislativa de Puerto Rico, con sus acciones concretas, ha reconocido la obligatoriedad de proveer acceso a evidencia exculpatoria bajo unos parámetros que no sean arbitrarios ni irrazonables. Veamos las particularidades del referido estatuto que nos ocupa.

**III**

El 29 de diciembre de 2015 se aprobó la Ley de análisis de ADN post sentencia (Ley Núm. 246-2015), 34 LPRA sec. 4021 et seq. Esta ley surge a base de la política pública del Gobierno en cuanto a que "[u]n solo inocente tras las rejas es suficiente para que [la] Asamblea Legislativa apruebe la

[Ley Núm. 246-2015], siendo nuestro deber proteger al máximo nuestra Carta de Derechos, primera línea de defensa de nuestra democracia". Ley de análisis de ADN post sentencia 2015 (Parte 3) Leyes de Puerto Rico 2302. Asimismo, busca evitar que una persona inocente cumpla una sentencia, por no haber tenido a su disposición prueba exculpatoria previo haberse dictado sentencia. De ese modo, la precitada ley intenta buscar un balance entre evitar convicciones erróneas y dar justicia a la víctima y sus familiares. Íd., pág. 2302. Dicho en otras palabras, la Ley Núm. 246-2015, supra, busca aumentar las posibilidades de encontrar al verdadero responsable de un crimen y exonerar al convicto incorrectamente.

Esta legislación surge ante una clara tendencia, desde el 2004, en la esfera federal y en los diferentes estados de adoptar medidas similares a la presente. En ese sentido, el Gobierno Federal aprobó la Justice for All Act of 2004 y el Inoccence Protection Act, 18 USC 3600 et seq., con el fin de establecer un proceso para la petición de análisis de ADN en la etapa post sentencia. Ley de análisis de ADN post sentencia 2015 (Parte 3) Leyes de Puerto Rico 2999. Además, resulta importante resaltar que al momento son cuarenta y nueve estados los que cuentan con algún tipo de legislación para viabilizar las peticiones de análisis de ADN en la etapa post sentencia. Íd.

Por otra parte, la Ley Núm. 246-2015, supra, reconoce que, aunque nuestras Reglas de Procedimiento Criminal permiten que un tribunal celebre un nuevo juicio por el acusado haber

advenido en conocimiento de evidencia nueva, estas no disponen derecho alguno para que se puedan realizar pruebas genéticas posterior a la sentencia. Así, esta ley sirve como complemento a las disposiciones de nuevo juicio, ya que permite al acusado obtener nueva evidencia para poder fundamentar correctamente su moción a tales efectos. Véase, Íd., pág. 2300.

Como vemos, la ley en cuestión crea un esquema de dos partes para que la persona pruebe su inocencia por consecuencia del análisis de ADN efectuado. En primer lugar, la persona interesada debe presentar una Moción para solicitud de análisis de ADN post sentencia que cumpla con lo dispuesto en el Art. 5. 34 LPRA sec. 4024. Éste dispone que la moción debe estar juramentada y que debe contener, en lo pertinente, lo siguiente: una explicación de por qué la identidad del responsable del crimen presenta una controversia significativa en el caso; una justificación detallada de cómo la solicitud de ADN establecerá una razonable probabilidad de que cambie el veredicto o fallo del Tribunal de haberse presentado los resultados de éste en el juicio; haber identificado la evidencia específica que será objeto del análisis, entre otras cosas.

Luego de haber presentado con éxito la referida moción, se efectuará el análisis de ADN solicitado y el solicitante podrá, a base de la evidencia nueva, solicitar una moción de nuevo juicio, al amparo de la Regla 192 de Procedimiento Criminal supra. Adviértase, que, como mencionamos anteriormente, para que la evidencia producto del

análisis de ADN sea suficiente para que prospere la moción de nuevo juicio, deberá ser "de tal naturaleza que evidencien la inocencia del condenado". Íd. Es decir, la Ley Núm. 246-2015, supra, en ningún sentido garantiza o intenta proveer un procedimiento expedito para la excarcelación de un confinado. En vez, ésta le provee a un confinado, que alega ser inocente, la oportunidad de poder encontrar aquella evidencia que sustente su alegación, en etapas posterior a la sentencia.

Por último, resulta importante destacar el debate que ha surgido en cuanto a la vigencia de la Ley Núm. 246-2015, supra. Recientemente, el Departamento de Justicia anunció públicamente que su interpretación del Art. 4, 31 LPRA sec. 4023, restringía la vigencia de la ley a sólo doce meses desde su aprobación, postura que acogió el Tribunal de Apelaciones.[5] Por ende, toda moción para análisis de ADN fundamentada al amparo de la Ley Núm. 246-2015, supra, debía ser presentada

---

[5]El referido artículo leía como sigue:

La moción solicitando análisis de ADN deberá presentarse dentro del mismo término dispuesto para presentar una solicitud de nuevo juicio al amparo de la Regla 189 de las de Procedimiento Criminal.
No obstante lo establecido en el párrafo anterior, un Tribunal podrá considerar una moción al amparo de lo establecido en esta Ley a aquellos convictos cuyas sentencias dictadas desde el 24 de julio de 1985, fecha en que se creó el Instituto de Ciencias Forenses, y de estar disponible la evidencia solicitada, la moción deberá ser presentada en un término jurisdiccional de **doce (12) meses contados a partir de la vigencia de esta Ley**. 31 LPRA sec. 4023 (énfasis suplido).

en o antes de los doce meses siguientes a la vigencia de la ley, entiéndase, 29 de diciembre de 2016.[6]

No obstante, el mencionado debate se tornó académico, el 7 de febrero de 2018, con la aprobación de la Ley Núm. 73-2018. La precitada ley enmendó el Art. 4, supra, para que lea como sigue:

> Un Tribunal deberá considerar una moción de solicitud de análisis de ADN al amparo de lo establecido en esta Ley para aquellos convictos cuyas sentencias fueron dictadas desde el 24 de julio de 1985 . . . . Dicha moción deberá ser presentada **en un término jurisdiccional de doce (12) meses contados a partir de que el peticionario o su representación legal advenga en conocimiento de que existe evidencia disponible para ser analizada**. 34 LPRA sec. 4023, según enmendada.

De esta manera, la Asamblea Legislativa estableció con suma claridad la vigencia de la Ley Núm. 246-2015, supra. Incluso, para no dejar dudas al respecto, la exposición de motivos de esa enmienda establece que "el principio de favorabilidad permite que cualquier persona que pudiera haberse acogido a los beneficios de la Ley Núm. 246, supra, pero que todavía no lo ha hecho, tendrá la oportunidad de así hacerlo. Como consecuencia, se estableció que la vigencia de las enmiendas aprobadas sería de aplicación retroactiva al 29 de diciembre de 2015. Véase, Exposición de motivos, Ley Núm. 73-2018.

**IV**

---

[6]Cabe resaltar que éste fue uno de los fundamentos del Tribunal de Apelaciones en el caso de autos para denegar la solicitud del peticionario.

En primer término, y reiterando la importancia de la búsqueda de la verdad, este tribunal ha expresado que "[l]a justicia demanda la verdad porque precisa de ella para manifestarse. 'Baste recordar **que el propósito del juicio no es obtener una convicción, sino la depuración de hechos en búsqueda de la verdad'**". Pueblo v. Vélez Bonilla, supra, pág. 708 (énfasis suplido) (nota al calce omitida). Sin embargo, existen casos en que la realidad es muy distinta. Una de las razones para ello puede muy bien ser la necesidad urgente de hacer justicia y la desesperación colectiva por encausar a los criminales que rompan las normas que hemos establecido para la sana convivencia como sociedad. Z. Rivera Vázquez, El ADN y los desvaríos de la justicia: Primera exoneración por ADN en Puerto Rico, 56 Rev. Der. P.R. 145, 164-165 (2016). Véase, además, I. Rivera Sánchez, La identificación del acusado, 78 Rev. Der. P.R. 113 (1980). Sin embargo, debe quedar claro que "[l]a **verdad debe prevalecer por encima de esa sed que tenemos de hacer justicia y por encima de las emociones que provocan ciertos casos . . .** ". Íd. pág. 157 (énfasis suplido).

De igual modo, es hartamente sabido que nuestro sistema de justicia no es perfecto, ninguno lo es. Son varias las instancias en donde "las sentencias condenatorias son obtenidas [sólo mediante] prueba circunstancial y sin tener la evidencia exculpatoria que cambie el resultado del fallo condenatorio". Ley de análisis de ADN post sentencia, 2015 (Parte 3) Leyes de Puerto Rico 2298. No obstante, la Ley Núm.

246-2015, <u>supra</u>, es uno de esos intentos por tratar de tener un sistema de justicia más justo, eficiente y certero. Así, en aras de promover la política pública mencionada, los tribunales debemos promover una interpretación coherente y pragmática a las situaciones que surjan como consecuencia de ésta. Por ende, ante tales situaciones, es importante que el juzgador tome en consideración si la petición del confinado es para un mero traslado de la evidencia o si, por el contrario, resulta ser una moción para llevar a cabo un análisis de ADN. De estar en el primer supuesto, la Ley Núm. 246-2015, **según enmendada**, no establece ningún requisito particular. Por otro lado, de estar en el segundo supuesto, es importante que la moción cumpla cabalmente con lo estipulado en el Art. 5, 34 LPRA sec. 4024.[7]

Por otra parte, no se deben dar por sentado los remedios y garantías que ofrece el debido proceso de ley. Al encontrarnos con un reclamo de esa naturaleza, es importante determinar si, bajo un análisis coherente y razonable, el debido proceso de ley sirve como fundamento para el remedio que el ciudadano solicita. Este tribunal ha expresado que "*[l]a 'llave' que da acceso a esta posibilidad es una sola y se llama 'debido proceso de ley'*". <u>Pueblo v. Arzuaga</u>, supra,

---

[7]Resulta importante resaltar que la referida sección requiere que el análisis de ADN debe establecer con una **razonable probabilidad** de que cambiaría el veredicto. Nótese, que este es un <u>quantum</u> de prueba menor al requerido para que prospere una moción de nuevo juicio, a tenor con la Regla 192 de Procedimiento Criminal, 34 LPRA, Ap. II, sec. 192.

pág. 534. El texto antes citado surge del caso de <u>Pueblo v. Arzuaga</u>, en el que este Tribunal determinó que la obligación del Estado de proveer al acusado evidencia exculpatoria no depende que se haya hecho una solicitud previa por parte de éste, sino que **opera por sí misma**. Así, entendió que esta obligación surgía del debido proceso de ley, en su vertiente procesal. Máxime, cuando lo que está en controversia es la libertad de una persona que alega haber sido convicta erróneamente. Consecuentemente, entiendo que, como mínimo, debemos reconocer que la "llave" que abre la posibilidad de que el Estado tenga que proveer evidencia exculpatoria en etapas post sentencia se llama el debido proceso de ley.

**V**

De otra parte, se debe tener presente que esta controversia es susceptible a ser revisada por el Máximo Foro Federal. Aunque, el Tribunal Supremo Federal estableció que no existe un derecho constitucional federal a pruebas de ADN posterior a la sentencia, el referido foro sí determinó que los procedimientos concernientes a análisis de ADN post sentencia, al amparo de una ley estatal, sí están protegidos por la Decimocuarta Enmienda de la Constitución Federal. Emda. XIV, Const. ELA, LPRA, Tomo 1. <u>Véase</u>, <u>Dist. Attorney's Office for Third Judicial Dist. v. Osborne</u>, 557 US 52, 68 (2009) ("This 'state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right'".). <u>Véase, además</u>, C.V. Buskirk, <u>Guilty Until Proven Innocent: Clearing Massachusetts's Uncertain</u>

Road to Post-Conviction DNA Testing, 85 St. John's L. Rev.
1595, 1597 n.14 (2011).

El profesor Brandon L. Garrett ha expresado que la
decisión en el caso de Dist. Attorney's Office for Third
Judicial Dist. v. Osborne no debe ser considerada como si
dejara al ciudadano desprovisto de cualquier protección de la
Constitución Federal a los procedimientos de análisis de ADN,
dado que, si el Estado ha establecido un procedimiento para
llevar a cabo el referido análisis, este tiene que cumplir
con el debido proceso de Ley. En palabras de Garett:

> The Court did not recognize an open-ended
> constitutional right of access to postconviction
> DNA testing, **but instead recognized** a liberty
> interest in the nonarbitrary application of state
> postconviction procedures. Following prior
> procedural due process rulings, the Court noted
> **that if a state creates an entitlement, it cannot
> arbitrarily deny access to it.** B.L. Garrett, DNA
> and Due Process, 78 Fordham L. Rev. 2919, 2923
> (2010) (énfasis suplido).

Expuesto el marco jurídico aplicable y atendidas los
asuntos medulares, procedo a aplicarlo a la controversia
presente.

**VI**

En primer término, he establecido que la petición ante
nuestra consideración está amparada bajo los contornos del
debido proceso de ley. Asimismo, resulta claro que la presente
controversia envuelve el serio interés del peticionario en
poder probar su inocencia, con el fin de lograr su
excarcelación y, por otro lado, el interés permanente del
Estado de descubrir la verdad. Así las cosas, queda claro que

el debido proceso exige que, en casos como este, se mantenga un deber de proveer al confinado toda prueba exculpatoria que llegue a manos del Estado, sin importar la que haya culminado el procedimiento penal. Es decir, este deber no cesa al dictarse sentencia.

Fuera del contorno constitucional, existe un deber ético de los fiscales el proveer a la defensa toda prueba exculpatoria que estos obtengan en cualquier etapa. Véase, además, Opinión disidente del Juez Asociado Stevens en Dist. Attorney's Office for Third Judicial Dist. v. Osborne, supra, 94-95 (citación omitida). De ese modo, el fallar en proveer evidencia exculpatoria al confinado en cualquier etapa del proceso, incluyendo post sentencia, constituye una violación al debido proceso de ley.

En segundo término, la enmienda efectuada a la Ley Núm. 246-2015, supra, deja claro dos asuntos que estaban previamente en controversia. Primero, aclara el término de la vigencia de la ley para disponer que el término jurisdiccional de doce meses será a partir de que el peticionario o su representación legal advenga en conocimiento de que existe evidencia disponible para ser analizada. Por otro lado, la enmienda realizada expresamente resuelve la controversia ante nos. En ese sentido, el Art. 4 fue enmendado para añadir lo siguiente:

> Asimismo, el peticionario **podrá solicitar el traslado al Negociado de Ciencias Forenses**, de **la evidencia que se pretenda sea analizada al amparo de esta Ley,** cuando la misma se encuentre bajo la custodia de cualquier otra entidad pública. En

estos casos se le ordenará a un funcionario del Tribunal lleve a cabo el correspondiente traslado en un término, no mayor de cinco (5) días, contados a partir de que se haya resuelto la moción concediendo el remedio solicitado. 34 LPRA sec. 4023, según enmendada (énfasis suplido).

La exposición de motivos de la referida enmienda aclara que:

Así también, se aprovecha la oportunidad para establecer un **mecanismo de solicitud de traslado** cuando la evidencia que podría ser susceptible de análisis de ADN se encuentra bajo custodia de una entidad pública a la cual la defensa no tiene acceso. Para ello, se propone la intervención del Tribunal para ordenar el traslado de la evidencia al Negociado de Ciencias Forenses. Exposición de motivos, Ley 73 de 6 de febrero de 2018(énfasis suplido).

De lo anterior se desprende que la solicitud presentada por el señor Torres Rivera responde al mecanismo de traslado dispuesto en la misma Ley Núm. 246-2015, según enmendada. No se desprende del texto de la referida ley que esa solicitud tenga que cumplir con algún requisito particular de forma o justificación en derecho. De ese modo, hoy, la Mayoría de este Tribunal opta por ignorar el texto claro de la Ley Núm. 246-2015.

Previamente, en Pueblo v. Moreno González, 115 DPR 298, 301 (1984), establecimos que el debido proceso de ley le impone el deber al Estado de aplicar las normas penales con rigurosa justicia, precisión y de manera que reduzcan las probabilidades de encausar a un inocente. No me parece que la norma debe ser distinta cuando se trata de normas que beneficien confinados en etapas posteriores a la sentencia. No obstante, este Tribunal hoy opta por interpretar la Ley

Núm. 246-2015, *supra*, de manera injusta, incoherente e ignorando el mandato legislativo y la letra clara de ésta.

La interpretación de los foros recurridos y la negativa de este Tribunal de atender el recuso resulta en validar una interpretación y aplicación irrazonable y arbitraria del Estado, contrario a los fundamentos aquí discutidos. <u>Véase</u>, <u>Dist. Attorney's Office for Third Judicial Dist. v. Osborne</u>, supra, 89 ("The fact that nearly all the States have now recognized some postconviction right to DNA evidence makes it more, not less, appropriate to recognize a limited federal right to such evidence in cases where litigants are unfairly barred from obtaining relief in state court".).

No obstante, lo anterior, también me parece que los foros recurridos erraron al determinar que no se cumplieron con los requisitos establecidos en el Art. 5, 34 LPRA sec. 4024, en lo referente a la moción para solicitar el análisis de ADN post sentencia.

Como reseñé, la precitada ley se construye en un esquema de dos partes. En la primera, se intenta obtener evidencia que pueda servir para justificar la concesión del remedio consagrado en la Regla 192 de Procedimiento Criminal, <u>supra</u>, que es precisamente lo que concierne la segunda parte; la presentación de una moción de nuevo juicio fundamentada en la evidencia obtenida a raíz del análisis de ADN. Sin embargo, la defensa del señor Torres Rivera ni siquiera estaba intentando presentar una moción para solicitar el análisis de ADN post sentencia, sino que meramente estaba solicitando el

traslado de la evidencia, para entonces poder determinar si estaba en posición para presentar la mencionada moción. Actuación que, como indicamos, está actualmente avalada por la Ley Núm. 246-2015, supra.

Ante la negativa de atender su recurso, ¿qué remedio tiene entonces el señor Torres Rivera para fundamentar su posible moción para análisis de ADN? Me parece que son los tribunales los indicados para ordenar este tipo de remedio, ante la omisión de la Rama Ejecutiva en observar cabalmente el mandato constitucional y legislativo. Este problema precisamente fue una de las preocupaciones esbozadas por el Juez Stevens en su disenso en Dist. Attorney's Office for Third Judicial Dist. v. Osborne. En específico, éste estableció que:

> The problem is that the newly discovered evidence he wishes to present cannot be generated unless he is first able to access the State's evidence—something he cannot do without the State's consent or a court order. Although States are under no obligation to provide mechanisms for postconviction relief, when they choose to do so, the procedures they employ must comport with the demands of the Due Process Clause by providing litigants with fair opportunity to assert their state-created rights. Dist. Attorney's Office for Third Judicial Dist. v. Osborne, supra, 89-90, (citación omitida)

En consecuencia, se atrapa al peticionario en un raciocinio incoherente e injusto, en el que éste no puede usar el mecanismo de traslado provisto expresamente en nuestro ordenamiento jurídico, dado que el Estado no le permite acceso a la evidencia que posiblemente fundamenta su inocencia.

**VII**

Por los fundamentos expuestos en este disenso, hubiera revocado a los foros recurridos y ordenado el traslado de la evidencia, puesto que dicha acción está garantizada por la cláusula del debido proceso de ley y expresamente autorizada por la Ley Núm. 246-2015, supra. Asimismo, hubiese determinado que, a la luz de la reciente enmienda a la referida ley, el término jurisdiccional de doce meses comienza a contar desde que el peticionario o su representación legal advenga en conocimiento de que existe evidencia disponible para ser sometida a un análisis de ADN.


                                        Luis F. Estrella Martínez
                                              Juez Asociado